Opinion issued August 31, 2006
















In The
Court of Appeals
For The
First District of Texas



NO. 01-05-00561-CR
____________

MARIA BLANCA VARGAS, Appellant

V.

THE STATE OF TEXAS, Appellee



 
On Appeal from the County Criminal Court at Law No. 3
Harris County, Texas
County Court Appeal No. 5396

 
 
MEMORANDUM OPINION
          A jury found appellant, Maria Blanca Vargas, guilty of the offense of Failure
to Post a Certificate of Occupancy


 and assessed her punishment at a fine of $2,000. 
In five issues, appellant contends that (1) the offense specified in the trial court’s
charge does not exist, (2) appellant had no duty to obtain or post a Certificate of
Occupancy, (3) the ordinance she was charged with violating is unconstitutionally
overbroad and vague, (4) the trial court’s charge was defective, and (5) the trial court
erred in excluding evidence. 
          We affirm. 
Factual and Procedural BackgroundCity of Houston electrical inspector W. Melnik testified that, on August 28,
2002, he went to the Park on Westview apartment complex, located at 10,157
Westview, to follow up on a previous City inspection. Melnik explained that this
particular business had received a “ten-day notice” several weeks prior to his visit
warning of non-compliance with Houston Municipal Code requirements regarding
a Certificate of Occupancy. Consistent with his customary practice during building
inspections, Melnik entered the office and asked to “speak to the manager, the owner,
or person in charge.” After appellant identified herself as the manager, Melnik told
her about the ten-day notice and that the building remained in violation of municipal
provisions regarding the posting of a certificate. Melnik then issued appellant two
criminal citations for the offenses of “Failure to Post a Certificate of Occupancy” and
“failure to comply with written notice to wit: did not apply for Certificate of
Occupancy.”
          Appellant testified that she had worked at the Park on Westview for eight years
and handled rental agreements and maintenance calls. She did not remember
receiving prior warnings regarding the issuance and posting of a certificate for the
apartment building. Appellant explained that her supervisor, the owner of the
building, lived in California and paid any monies that became due in connection with
the property. She stated that when Melnik, accompanied by a police officer, arrived
at the building on August 28, 2002, they demanded that she produce identification
before issuing her a citation for not having a certificate posted at the property. 
Appellant stated that, prior to August 28, she had never heard of the certificate
requirement and did not believe that she had violated any law. 
          In rebuttal, the City introduced two “warnings” dated July 11, 2002, and
August 7, 2002, which contained appellant’s name and telephone number. Also, City
of Houston Occupancy Department officer Steve Hawkins testified that he delivered
“in [appellant’s] hands” a notice requiring the complex to make application for a
certificate within ten business days.
          Jack Yetiv, the owner and supervisor of the Park on Westview since the fall of
1991, testified that, on August 28, 2002, appellant called him and told him about
Melnik’s visit to the complex. In explaining the absence of a posted certificate at the
complex, Yetiv attempted to testify about a 1994 lawsuit between himself and the
City in which he asserted that the “Certificate of Occupancy issue was litigated . . . .” 
However, the City objected to Yetiv’s testimony. In an ensuing bench conference,
Yetiv, who also served as appellant’s trial counsel, argued that the testimony
regarding the lawsuit was relevant because it demonstrated that the City had
knowledge that a certificate had been issued for the building and that the City’s
prosecution was “arbitrary and capricious.” The trial court sustained the City’s
objection stating, “[w]e’re not going to talk about the other lawsuit.” Yetiv then
testified that a certificate had in fact been issued for the complex and that he had
received copies of the certificate from the City in 1996 or 1997. Yetiv conceded that
the certificate was not posted on August 28, the date of the citations, but explained
that, when he had previously posted copies of the certificate outside the buildings,
“[t]hey didn’t stay there for very long.”
Jury ChargeIn her first issue, appellant argues that her conviction must be set aside because
the language of the trial court’s charge to the jury did not tender the pertinent city
ordinance and it submitted to the jury “a charge of a crime that does not exist.” In her
fourth issue, appellant argues that the trial court’s charge to the jury led to an
improper guilty verdict because its “use of the term ‘knowingly’ . . . is problematic.”
          Reversal is required for a jury charge error when the defendant has properly
objected to the charge and the appellate court finds “some harm” to her rights. 
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Where a defendant
fails to object to or states that she has no objection to the charge, the court will not
reverse unless the error was so egregious and created such harm that the defendant
did not have a fair trial. Bluitt v. State, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004);
Almanza, 686 S.W.2d at 171. 
          Here, the trial court, in its charge, instructed the jury that appellant “stands
charged by complaint with the offense of ‘Failure to Post a Certificate of
Occupancy.’” The charge further explained that “[o]ur ordinance provides that it is
unlawful for a structure to be used or occupied unless a Certificate of Occupancy is
posted in a conspicuous place.” It instructed the jury to find appellant guilty if it
found that she “did unlawfully and knowingly use and occupy a structure located at
10,157 Westview without having posted in a conspicuous place on the premises a
Certificate of Occupancy for the said structure issued by the building official of the
City of Houston, Texas.” 
          Appellant first asserts that the charge language did not track the pertinent city
ordinance and that it combined elements of two separate laws to create a new hybrid
criminal law that does not exist. Appellant notes that Building Code section 110.6
says nothing about “using or occupying” a structure. She argues that because the
charge focused on the unlawfulness of “using or occupying” a structure, the charge
“included a new element that is not found in section 110.6. See Houston, Tex.,
Building Code § 110.6 (2003). Appellant contends that “to allow prosecution of
defendants upon a complaint that draws elements from separate ordinances would be
to impermissibly grant to prosecutors and judges a legislative power to combine
separate and independent statutes so as to create new crimes.”
          Here, the ordinance at issue is section 110.6 of the City of Houston Building
Code, now codified in the Construction Code and adopted by the City of Houston by
reference.


 Section 110.6 provides that “[a] certificate of occupancy shall be posted
in a conspicuous place on the premises and shall not be removed except by the
building official.” Houston, Tex., Building Code § 110. 6. Section 110.1 states,
“No building or structure shall be used or occupied . . . until the building has been
issued a Certificate of Occupancy.” Houston, Tex., Building Code § 110. 1.
Appellant argues that the “used or occupied” language of the charge was improperly
imported from section 110.1. However, section 113.1 of the Building Code, in
defining “unlawful acts,” makes clear that “it [is] unlawful for any person, firm, or
corporation to . . . occupy any building, structure, or equipment regulated by this
code, or cause same to be done, in conflict with or in violation of any of the
provisions of this code.” Houston, Tex., Building Code § 113.1 (2003). Reading
the Building Code provisions together in context makes clear that the trial court’s
charge to the jury did track the language of the ordinance and did not contain any
extra or unnecessary elements creating a new hybrid crime.
          Appellant next asserts that the trial court’s charge to the jury was “otherwise
defective because it focused the term ‘knowingly’ at the phrase (‘use or occupy’) that
was added by the trial court but that is not in the city ordinance.” She contends that
the error “focused the jury’s attention on a portion of the charge that should not have
been in the charge in the first place.” She also asserts that the use of “knowingly
occupy” in the charge “basically removes the scienter requirement” and that the
proper instruction should have stated “knowingly failed to post.”
          To properly allege any offense, the State must allege a culpable mental state
unless the definition of the offense plainly dispenses with any mental element. See
Tex. Pen. Code Ann. § 6.02 (Vernon Supp. 2005). Here, reading the pertinent
Building Code provisions in context, it is clear that “knowingly” was the appropriate
culpable mental state and that the placement and use of the word “knowingly” did not
unfairly prejudice appellant. 
          Accordingly, we hold that the trial court did not err in submitting the charge
to the jury. 
          We overrule appellant’s first and fourth issues.
Criminal Responsibility
          In her second issue, appellant argues that because she had no duty to obtain or
post a certificate, she “cannot be convicted” of the offense of Failure to Post a
Certificate of Occupancy.
          Appellant notes that Texas Penal Code section 6.01 specifies that crimes of
omission can be charged only if a defendant has a duty under the law to perform the
omitted act. Tex. Pen. Code. Ann. § 6.01 (Vernon 2003). She contends that there
is no law that gives appellant, as an apartment manager, the duty to obtain or to post
a certificate. However, section 7.23(b) of the Penal Code provides that an agent
“having primary responsibility” for the discharge of a duty may be criminally
responsible for its omission. Tex. Pen. Code Ann. § 7.23(b) (Vernon 2003). “The
term ‘primary responsibility’ is one in common use.” Sabine Consol., Inc. v. State,
816 S.W.2d 784, 789 (Tex. App.—Austin 1991, pet. ref’d) (holding that “primary
responsibility,” as stated in section 7.32(b) of the Texas Penal Code, is not vague or
indefinite). Appellant answers that the State failed to adduce any evidence showing
that appellant had “primary responsibility” for either obtaining or posting a certificate
on behalf of the Park on Westview. We disagree. Here, the uncontroverted testimony
was that appellant was the manager of the apartment complex. Appellant testified
that she handled various administrative matters, including obtaining the necessary
pool permits for the complex. Thus, the evidence supports an inference that, as the
on-site manager, appellant had the primary responsibility to ensure that the apartment
complex operated legally, especially when she was given personal notice by the City
regarding the certificate requirement and the complex’s non-compliance. 
Accordingly, we hold that the evidence is legally sufficient to prove that appellant
had the primary responsibility for obtaining and posting a certificate on behalf of the
complex.
          We overrule appellant’s second issue.
Constitutional Issues
          In her third issue, appellant argues that the ordinance is unconstitutionally
overbroad and vague because it does not specify who has a duty to post a certificate.
          Relying on Koleander v. Lawson, 461 U.S. 352, 360, 103 S. Ct. 1855, 1859–60
(1983), appellant argues that the statute is unconstitutional because it does not define
who can be charged and “entrust[s] lawmaking to the moment-to-moment judgment
of the policeman on his beat.” Appellant asserts that there is evidence that the
enforcement in her case was arbitrary and discriminatory. Appellant points to
evidence of a $500,000 jury verdict won by Yetiv, the owner of the property, against
the City. She asserts that it was only a few weeks after the Texas Supreme Court
denied review in that case that the City inspectors appeared at two of Yetiv’s
properties and issued citations.


 Appellant notes that the properties were in good
condition and that the City should have been aware that Yetiv had certificates because
he had obtained them from the City as a result of the previous lawsuit. 
Overbreadth
          A statute is unconstitutionally broad if it prohibits constitutionally protected
conduct. Leyva v. State, 635 S.W.2d 910, 911 (Tex. App.—Amarillo 1982, pet. ref’d)
(citing Bates v. State, 587 S.W.2d 121, 128 (Tex. Crim. App. 1979)).
          Here, appellant, in her briefing, does not assert that the pertinent ordinances
implicate any constitutionally protected interests. The conduct prohibited by sections
110.1 and 110.6 of the Building Code is not constitutionally protected—under either
the Texas or United States Constitutions—to the extent that the activities may not be
controlled in the manner specified by the section. See Leyva, 635 S.W.2d at 911. 
Moreover, the ordinances serve to protect public safety by ensuring compliance with
minimum standards as set forth in the Building Code. Accordingly, we hold that the
ordinances are not unconstitutionally overbroad.
Vagueness
          A statute is unconstitutionally vague if it fails to give a person of ordinary
intelligence fair notice of forbidden conduct and encourages arbitrary and erratic
arrests and convictions. Leyva, 635 S.W.2d at 911 (citing Bates, 587 S.W.2d at 127). 
However, when there is no constitutionally protected interest involved, the issue
becomes whether the ordinance is vague as applied to the defendant. Cain v. State,
855 S.W.2d 714, 718 (Tex. Crim. App. 1993). Whenever an attack upon the
constitutionality of a statute is presented for determination, we commence with the
presumption that such statute is valid and that the legislature has not acted
unreasonably or arbitrarily in its enactment. Cotton v. State, 686 S.W.2d 140, 144
(Tex. Crim. App. 1985); Clements v. State, 19 S.W.3d 442, 450 (Tex. App.—Houston
[1st Dist.] 2000, no pet.). 
           Unlike Koleander, this case involves a commercial regulation subject to “a less
strict vagueness test.” See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,
455 U.S. 489, 498, 102 S. Ct. 1186, 1193 (1982). Appellant asserts that anyone
visiting the apartment could be charged with this offense. Appellant argues that,
based on Melnik’s statement that “every situation is different,” the ordinances fail for
“lack of notice to the public” because citizens do not have advanced notice of whether
they might be criminally charged. However, as noted, “[t]he fact [that a law] may be
unconstitutional as applied in other circumstances is not sufficient.” Cain, 855
S.W.2d at 718. The issue is whether the ordinances are vague as to appellant. Id. 
“That is, the reviewing court must look at the appellant’s conduct alone, and then, the
court must examine whether that conduct was clearly prohibited by the statute.” Id. 
          The Building Code makes clear that “it [is] unlawful for any person, firm, or
corporation to . . . occupy any building, structure, or equipment regulated by this
code, or cause same to be done, in conflict with or in violation of any of the
provisions of this code.” Houston, Tex., Building Code § 113.1. The evidence at
trial established that appellant failed to post a certificate and occupied the building
in violation of the relevant municipal code provisions after she received a notice
requiring the building to make application for a certificate. As the on-site manager,
appellant testified that each year she performed the necessary tasks to obtain other
required permits for the apartment complex. Here, the language of the ordinances is
“sufficiently clear that the speculative danger of arbitrary enforcement does not
render the ordinance[s] void for vagueness.” See Flipside, 455 U.S. at 503, 102 S.
Ct. at 1196 (holding that village ordinance that required retailer to obtain license if
it sold paraphernalia designed or marketed for use with illegal drugs was sufficiently
clear). Accordingly, we hold that the municipal ordinances in question are not, as
applied to the appellant, unconstitutionally vague.
          We overrule appellant’s third issue.Excluded Evidence
          In her fifth issue, appellant argues that the trial court erred in excluding
evidence regarding Yetiv’s prior lawsuit against the City because it would have
highlighted the unconstitutionality of the ordinance.
          During the guilt phase of appellant’s trial, Yetiv attempted to testify that he had
obtained the certificates from the City and had posted the certificates on his property
as a result of a previous lawsuit between himself and the City. The trial court ruled
that Yetiv could testify that he had obtained the certificates from the City and had
previously posted them, but could not go into the subject of the prior lawsuit or the
judgment rendered against the City. Subsequently, in his offer of proof, Yetiv
asserted that he stopped posting the certificates as a consequence of his jury verdict
against the City. Yetiv also asserted that his testimony regarding the lawsuit was
relevant to show that the issuance of a citation to appellant was discriminatory and
retaliatory in nature. 
          We review a trial court’s decision to admit or exclude evidence under an abuse
of discretion standard. See Salazar v. State, 38 S.W.3d 141, 151 (Tex. Crim. App.
2001). Evidence is relevant if it has “any tendency to make the existence of any fact
that is of consequence to the determination of the action more or less probable.” Tex.
R. Evid. 401. 
          Here, the pertinent issue during the guilt phase of appellant’s trial was whether
appellant had posted the certificates as required. The trial court allowed Yetiv to
testify that he obtained the certificates for the complex from the City and that he had
posted certificates outside of the building, which “didn’t stay there for very long.” 
Moreover, during cross-examination, Yetiv was also able to testify that he had posted
the certificates “as a predicate to the lawsuit.” Evidence that Yetiv had previously
won a jury award against the City, which was reversed on appeal, had no relevance
as to whether appellant was guilty of the offense of failure to post a certificate. 
Accordingly, we hold that the trial court did not err in excluding Yetiv’s testimony
regarding the previous lawsuit. 
          We overrule appellant’s fifth issue.
 
 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice 
 
Panel consists of Justices Jennings, Hanks, and Higley.
Do not publish. Tex. R. App. P. 47.2(b)